UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAVID STEWART, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:20-cv-01818-TWP-TAB |
| WEXFORD, | ) ) ) |
| Defendant. | ) ) |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON FEDERAL CLAIMS AND DISMISSING SUPPLEMENTAL STATE LAW CLAIMS**

This matter is before the Court on a Motion for Summary Judgment filed by Defendant Wexford of Indiana, LLC, ("Wexford") (Dkt. 35). Plaintiff David Stewart ("Mr. Stewart") filed this lawsuit alleging that Wexford violated Indiana tort law and his Eighth Amendment right to constitutionally adequate medical care through its widespread practices. (Dkt. 16.) For the reasons explained below, Wexford's Motion is **granted** as it is entitled to summary judgment on the Eighth Amendment claims and the supplemental state law claims based on Indiana tort law are dismissed for lack of jurisdiction.

### I.  STANDARD OF REVIEW

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed Rule of Civil Procedure 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. A party who fails to produce evidence sufficient to establish an element essential to that party's case on which they bear the burden of proof cannot survive a summary judgment challenge. *Zander v. Orlich*, 907 F.3d 956, 959 (7th Cir. 2018) (citing *Celotex Corp.*, 477 U.S. at 322).

## II.   FACTUAL BACKGROUND

Because Wexford has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

The Court takes judicial notice that, as of July 1, 2021, Wexford is no longer the contractor providing medical care for the Indiana Department of Corrections ("IDOC"); instead, since that date Centurion Health of Indiana, LLC has been the company providing medical services for the IDOC.  *See*  https://www.prnewswire.com/news-releases/centurion-health-provides-correctional-health-for-indiana-department-of-correction-301331594.html (last visited July 29, 2022).

Mr. Stewart is currently incarcerated at the New Castle Correctional Facility ("New Castle"). (Dkt. 37-3 at 3.)  Mr. Stewart may access the onsite healthcare system by submitting a healthcare request form to the medical staff. (Dkt. 37-2 at ¶ 12.)  Once a healthcare request form is submitted, a member of the nursing staff typically receives and reviews the request to determine what next steps are needed and whether the patient needs immediate treatment from a nurse or an onsite physician.  *Id*.  IDOC medical records reflect that on average, the typical response time to Mr. Stewart's healthcare requests were one to two days.  *Id.* at ¶ 13.  While there are some healthcare requests that were not responded to for three days, others were responded to within the same day they were submitted.  *Id.*

In August 2018, Mr. Stewart was taken by ambulance to Ball Memorial Hospital in Muncie, Indiana.  He received an emergency transfemoral left heart catheterization and coronary angiography, a coronary angioplasty, and a transradial coronary angiography during his stay in the hospital. (Dkt. 37-2 at ¶ 8.)  Upon his discharge from the hospital, he still had complaints of chest pain. Mr. Stewart received several diagnoses, including arteriosclerotic heart disease, hypertriglyceridemia, diabetes mellitus, and restless leg syndrome.  He also still had complaints of chest pain.  He was prescribed a number of medications at discharge.  *Id.*

The discharge notes from Ball Memorial Hospital state that Dr. Gray's office will call to schedule a follow-up appointment. (Dkt. 39-1.)  However, there is no record that Dr. Gray's office

ever contacted any medical staff at New Castle to request or schedule any follow-up medical treatment with Mr. Stewart. (Dkt. 37-2 at ¶ 9.) Additionally, there is no record of any onsite physician requesting that Mr. Stewart receive any additional offsite medical treatment that was not being provided onsite. *Id.*

Upon his return to New Castle, Mr. Stewart was seen and examined by onsite physician, Mark Cabrera, D.O. *Id.* at ¶ 9. Dr. Cabrera ordered accu-checks be completed for the next two weeks, twice per day. *Id.* Mr. Stewart continued to receive medical treatment from the onsite medical staff at New Castle for various complaints, including chest pain, vision problems, leg pain, and sciatic pain when walking. (Dkt. 37-2 at ¶ 10.) He has been prescribed a number of medications at various times throughout his incarceration, including but not limited to, Naproxen, Lipitor, Plavix, Glucotrol, Lamictal, Zestril, Cymbalta, Mobic, Trileptal, Pepcid, and Insulin. *Id.* at ¶¶ 11, 15. Mr. Stewart argues that Wexford was negligent in their medical care and violated its' duty and failed to ensure the appropriate medical care was provided. (Dkt. 39 at 7). He has suffered greatly because of this. *Id*.

### III.   DISCUSSION

Wexford argues that it is entitled to summary judgment on the Eighth Amendment claims Because there is no evidence that Mr. Stewart suffered any injury as a result of Wexford's widespread practices. The Court will first address the Eighth Amendment claims before turning to the state law negligence claim.

A.   **Eighth Amendment *Monell* Liability**

Mr. Stewart alleges Eighth Amendment claims for deliberate indifference to serious medical needs against Wexford. Wexford is a private company, but—because it contracts with the IDOC to provide medical services—it is treated as a municipality and may be held liable under

42 U.S.C. § 1983 if its policy, practice, or custom caused a constitutional violation. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)); *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 966 (7th Cir. 2019).

> To prevail on a *Monell* claim, plaintiffs must identify an action taken by the municipality, the requisite degree of culpability, and a causal link between the municipality's action and the deprivation of federal rights. A municipality 'acts' through its written policies, widespread practices or customs, and the acts of a final decisionmaker.

*Levy v. Marion Co. Sheriff*, 940 F.3d 1002, 1010 (7th Cir. 2019) (internal citations omitted). *Monell* liability is rare and difficult to establish. *Stockton v. Milwaukee Cnty.*, No. 22-1116, 2022 WL 3210359, at *6 (7th Cir. Aug. 9, 2022) (citing *Taylor v. Hughes*, 26 F.4th 419, 435 (7th Cir. 2022)).

Mr. Stewart's theory of liability is that Wexford has a practice of failing to provide 1) an uninterrupted supply of prescription medications, 2) timely responses to health care requests, 3) necessary appointments with specialists, and 4) needed medical equipment. (Dkt. 16.)

Wexford argues that it is entitled to summary judgment because "Plaintiff has failed to present any evidence that would allow a reasonable jury to find that Wexford of Indiana, LLC maintained some unconstitutional policy or practice." (Dkt. 36 at 17.) In response, Mr. Stewart concludes without citation to any evidence that his Eighth Amendment rights were violated by Wexford's improper policies and practices. (Dkt. 39 at 7.) In support he points to three examples of deficiencies in the medical care he received.

First, Mr. Stewart asserts that he was injured when a follow-up appointment with cardiologist Dr. Gray was not scheduled. (Dkt. 39-1.) But the discharge instructions on which he relies states that "Dr. Gray's office will contact you to schedule a follow up appointment." *Id.*

Under these circumstances, the failure to schedule a follow-up appointment cannot be understood to reflect a widespread policy or practice by Wexford. It reflects only that Dr. Gray or his office failed to follow up.

Nor is there any evidence that others were injured by a practice of failing to schedule follow-up appointments. *See Ruiz-Cortez v. City of Chi.*, 931 F.3d 592, 599 (7th Cir. 2019); *Chatham v. Davis*, 839 F.3d 679, 685 (7th Cir. 2016) ("*Monell* claims based on allegations of an unconstitutional municipal practice or custom ... normally require evidence that the identified practice or custom caused multiple injuries.").

Next, Mr. Stewart provides two examples of his claim that Wexford has a practice of failing to provide an uninterrupted supply of prescription medications. He explains that although Dr. Cabrera submitted a request for him to receive a 180-day supply of Brilanta, he only received this drug for 19 days from August 9, 2018, through August 28, 2018. (Dkt. 39-2 at 1.)[1] In addition, Mr. Stewart provided his Medication Administration Records to show that in June and July of 2019 he did not receive his KOP (keep on person) medication. (Dkt. 39-4.)

Assuming Mr. Stewart's Eighth Amendment rights were violated, the *Monell* claim fails because there is no evidence that Mr. Stewart was denied medications as a result of a Wexford custom or policy or that the denial was committed by an individual with final policymaking authority. *Stockton*, 2022 WL 3210359, at *6 (plaintiff "must provide evidence that the municipal action was the moving force behind [his] constitutional injury, a rigorous causation standard demanding a direct causal link between the challenged municipal action and the violation of [his] constitutional rights." (cleaned up)). Wexford has provided documentation to show that Mr. Stewart has been prescribed a number of medications during his incarceration, including Insulin

---

[1] Mr. Stewart argues without citation to evidence in support that he went without necessary medication for nine days until he began receiving Plavix on September 6, 2018. (Dkt. 39 at 4.)

6

to assist with the management of his diabetes. (Dkt. 37-2 at ¶ 11.)  Meanwhile, Mr. Stewart has not provided any specific evidence to show that there is an ongoing problem receiving his medication nor provided evidence that any issue with his receipt of the medication within the IDOC (1) occurred as a result of a Wexford custom or policy or (2) was committed by an individual with final policymaking authority.  *Helbachs Cafe LLC v. City of Madison*, No. 21-3338, 2022 WL 3350588, at *3 (7th Cir. Aug. 15, 2022) (citing *Sweet v. Town of Bargersville*, 18 F.4th 273, 277 n.2 (7th Cir. 2021)).

Under these circumstances, Wexford is entitled to judgment as a matter of law on the Eighth Amendment claim.  This resolves all of the federal claims.

**B.**    **State Law Claims**

Mr. Stewart also asserts negligence claims under Indiana law against Wexford.  The Court must determine whether it is appropriate to exercise supplemental jurisdiction over these state-law claims pursuant to 28 U.S.C. § 1367.  For the reasons that follow, the Court relinquishes supplemental jurisdiction over these claims and dismisses them without prejudice.

The Court ultimately has discretion whether to exercise supplemental jurisdiction over a plaintiff's state-law claims.  *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009); *see* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim … if … the district court has dismissed all claims over which it has original jurisdiction…."). When deciding whether to exercise supplemental jurisdiction, "'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'"  *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

The Seventh Circuit has made clear that "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *see Sharp Electronics Corp. v. Metropolitan Life Ins. Co.*, 578 F.3d 505, 514 (7th Cir. 2009) ("Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.") (cleaned up). Exceptions to the general rule exist: "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) (quoting *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994)) (internal quotation marks omitted).

The relevant factors weigh in favor of the Court following the "usual practice" in the Seventh Circuit and relinquishing supplemental jurisdiction. *Groce*, 193 F.3d at 501. The Court has not expended significant resources on the pending state-law claims. To the extent the parties have during discovery, which is not apparent from the record, those efforts can be duplicated in state court with relative ease. Relatedly, the Court decided the Eighth Amendment claim based on a lack of evidence of a policy or practice by Wexford, which is not at issue in the negligence claims. Finally, as always, comity favors allowing state courts to decide issues of state law.

Moreover, none of the exceptions to the usual practice of relinquishing supplemental jurisdiction apply here. The statute of limitations will not have run on Mr. Stewart's state-law claims, as both federal and state law toll the relevant limitations period when claims are pending in a civil action (except in limited circumstances not present here). *See* 28 U.S.C. § 1367(d); Ind.

Code § 34-11-8-1; *see also Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 266 (7th Cir. 1998). Substantial resources have not been expended on these claims, especially any that cannot simply be re-used in state court. Nor is it absolutely clear how the claims should be decided.

For these reasons, the Court exercises its discretion to relinquish supplemental jurisdiction over the remaining state-law claims.

### IV. **CONCLUSION**

Wexford's Motion for Summary Judgment, Dkt. [35], on the Mr. Stewart's Eighth Amendment claims is **GRANTED.** The remaining state-law claims are **dismissed** for lack of jurisdiction. Final judgment shall now issue.

**SO ORDERED.**

Date: 8/23/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

David Stewart, #260270
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
New Castle, Indiana  47362

Douglass R. Bitner
STOLL KEENON OGDEN PLLC
doug.bitner@skofirm.com

Rachel D. Johnson
STOLL KEENON OGDEN PLLC
rachel.johnson@skofirm.com